Richard G. TATUM, individually and on behalf of a class of all other persons similarly situated, Plaintiffs,

v.

R.J. REYNOLDS TOBACCO COMPANY; R.J. Reynolds Tobacco Holdings, Inc.; the RJR Employee Benefits Committee of the R.J. Reynolds Tobacco Company Capital Investment Plan; the RJR Pension Investment Committee of the R.J. Reynolds Tobacco Company Capital Investment Plan, Defendants.

No. 1:02 CV 373.

United States District Court, M.D. North Carolina.

Dec. 10, 2003.

J. Griffin Morgan, Robert M. Elliot, Elliot Pishko Morgan, P.A., Winston–Salem, NC, Jeffrey Lewis, Alfred H. Sigman, Lisa Belenky, Lewis & Feinberg, P.C., Oakland, CA, Bill Lann Lee, James M. Fingerg, Leiff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for Plaintiffs.

Daniel R. Taylor, Jr., Kilpatrick Stockton, L.L.P., Winston–Salem, NC, Tess J. Ferrera, Kilpatrick Stockton, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

The following motions are currently pending: Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. # 6]; and Plaintiff's Motion Requesting Oral Argument on Defendant's Motion to Dismiss, or alternatively, for Leave to File a Written Response to Defendant's Reply [Doc. # 12]. For the reasons stated below, Plaintiff's Motion Requesting Oral Argument or Leave to File a Response will be DENIED, and Defendants' Motion to Dismiss will be GRANTED.

### I.

The factual and procedural background of the dispute at hand is discussed, in turn, in the following two sections.

### A.

The allegations of the Complaint, stated in the light most favorable to the Plaintiff, are as follows: Defendants R.J. Reynolds Tobacco Holdings, Inc. ("RJRTH") and R.J. Reynolds Tobacco Company ("RJRT") are North Carolina corporations. RJRTH is the parent company of RJRT, a corporation that is engaged in the business of manufacturing and selling tobacco.

The R.J. Reynolds Tobacco Company Capital Investment Plan ("the Tobacco Plan" or "the Plan") is an employee pen-

sion and benefit plan within the meaning of the Employment Retirement Income Security Act ("ERISA") §§ 3(3) & 3(2)(A), 29 U.S.C. §§ 1002(3) & 1002(2)(A), that was established pursuant to 26 U.S.C. § 401(k). The Tobacco Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

Defendants RJRTH and RJRT, are "employers" and "plan sponsors" of the Tobacco Plan within the meaning of ERISA §§ 3(5), 3(16)(B), 29 U.S.C. §§ 1002(5), 1002(16)(B). Defendant RJR Employee Benefits Committee ("the Benefits Committee") is the Tobacco Plan administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). Defendant RJR Pension Investment Committee ("the Investment Committee") has the power to control and manage the Tobacco Plan assets, including the power to designate the investment funds to be included in the Plan. All four defendants [1] are fiduciaries of the Tobacco Plan, within the meaning of ERISA.

Plaintiff Richard G. Tatum is an "employee" (within the meaning of ERISA § 3(6), 29 U.S.C. § 1002(6)) of Defendant RJRT. Mr. Tatum is a "participant" in the Tobacco Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Participants in the Plan have the right to direct the investment of assets allocated to their individual account balance into one or more of the investment funds included in the Plan.

Prior to June 15, 1999, RJR Nabisco Holdings, Inc. ("RJRN") was the parent company of Defendant RJRT, Defendant RJRTH, and several Nabisco food companies. Basically, RJRN and its subsidiary companies engaged in two main enterprises-tobacco and food. On May 12, 1999, RJRN approved a plan to spin-off RJRT as a separate company so that RJRN's tobacco and food businesses would become separate entities. The stated rationale for this plan was to allow each business to achieve its full potential and to maximize long-term gain for each business' shareholders. As part of this endeavor, the then-existing "RJRN Capital Investment Plan" [2] would be split into two separate plans-one for the tobacco entities and one for the food entities. Before the split, the RJRN Capital Investment Plan had several investment fund options, including the Nabisco Group Holdings Common Stock fund (NGH stock) and the Nabisco Common Stock fund (NA stock), collectively "the Nabisco stocks."

The R.J. Reynolds Tobacco Company Capital Investment Plan, or "the Tobacco Plan," as referenced *supra*, was the plan created to serve the tobacco entities when the RJRN Capital Investment Plan was divided into the separate tobacco and food plans. Specifically, the Tobacco Plan was created on June 14, 1999 through an amendment to the original RJRN Capital Investment Plan.

The fiduciaries of the RJRN Capital Investment Plan decided that, as of the spin-off date, all Nabisco stocks held by the Tobacco Plan would be "frozen." As a frozen fund, Plan participants could not direct investment of new contributions into Nabisco stock, nor transfer existing plan assets to Nabisco stock. Also, participants were informed that the frozen Nabisco funds would be eliminated from the Tobacco Plan approximately six months after the spin-off date.

---

1. RJRTH, RJRT, the Benefits Committee, and the Investment Committee.

2. The RJRN Capital Investment Plan was the predecessor employee pension and benefit plan to the R.J. Reynolds Tobacco Company Capital Investment Plan ("the Tobacco Plan").

The spin-off occurred on June 15, 1999, and RJRTH and RJRT were severed from the Nabisco corporate group. At the time Defendants announced and implemented the spin-off and accompanying changes to the investment plans, NGH stock was selling at about $21 per share, and NA stock at about $42 per share. The market value of both Nabisco stocks declined over the next several months, and market analysts rated the stocks as "attractive," recommending that investors buy or hold their positions in Nabisco stock.

In October 1999, Tobacco Plan participants were notified that the frozen Nabisco stock would be eliminated as a Plan investment option on January 31, 2000. On November 18, 1999, the Tobacco Plan was amended to provide Plan investment options that would become effective on February 1, 2000. The listed options were as follows: the Interest Income Fund, the RJR Common Stock Fund, the total Stock Market fund, the Moderate Growth Fund, the Growth Fund, and any other investment funds designated by the Investment Committee. The Investment Committee retained discretion to designate other stock funds as investment options, and nothing in the amendment prohibited Tobacco Plan fiduciaries from maintaining Nabisco stock as a Plan investment option.[3]

Prior to January 31, 2000, Mr. Tatum objected to the planned sale of all the Nabisco stock, and requested that the Defendants exercise their fiduciary discretion and allow the Tobacco Plan participants to continue to direct investments to Nabisco stock. This would allow the Nabisco stock to rebound, as market analysts were predicting it would, before the stock was sold. The Tobacco Plan, through the Defendants, refused Mr. Tatum's request.

On January 31, 2000, the scheduled date of elimination for the Nabisco stock, NGH's market price had fallen to about $8.50 per share, and NA's price to about $30 per share. From June 15, 1999 (the date of the spin-off) until January 31, 2000, NGH and NA stock lost about 60 and 40 percent, respectively, of their value. All NGH and NA stocks remaining in the Tobacco Plan were sold, at the direction of the Defendants, on January 31, 2000. Because of the low Nabisco stock prices, the sale created a substantial loss to the Tobacco Plan and its participants.

After the January 31, 2000 sale, the value of NGH and NA stock did rebound. By late June 2000, the price of the NGH stock had increased to about $30 per share, and the price of the NA stock to about $55 per share.

## B.

On May 13, 2002, Plaintiff filed a Complaint in the Middle District of North Carolina [Doc. # 1], alleging that Defendants breached their fiduciary duty under ERISA §§ 404(a)(1), 405, 409, 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1105, 1109, 1132(a)(2). Subject matter jurisdiction is based upon federal question pursuant to 28 U.S.C. § 1331, and is therefore proper in this Court.

Plaintiff[4] is bringing suit individually and on behalf of all class members.[5] The Complaint alleges that the requirements

---

**3.** Defendants contend that the language of the Amendment *did* prevent them from maintaining the Nabisco funds as a Plan investment option.

**4.** Throughout this opinion, the terms "Plaintiff" and "Mr. Tatum" will be used to reference all members of the plaintiff's proposed

class, that is, Mr. Tatum and all individual class members, unless otherwise specified.

**5.** The Complaint defines the class as follows:
 All participants in the R.J. Reynolds Tobacco Company Capital Investment Plan ("Plan") for whose individual accounts the Plan held shares of Nabisco Group Hold-

for maintaining the action as a class action under Fed.R.Civ.P. 23(a), 23(b)(1), and 23(b)(2) have been satisfied, and lists supporting details.

The Plaintiff requests that this Court grant the following relief: (1) certify the suit as a class action pursuant to Fed. R.Civ.P. 23; (2) declare that Defendants breached their ERISA fiduciary duty to Tobacco Plan participants; (3) order Defendants to pay the Tobacco Plan an amount necessary to compensate for the loss caused by their breach, including lost returns and interest; (4) allocate the Tobacco Plan's recovery among the individual plaintiff class members' accounts; (5) enjoin Defendants from further ERISA violations; (6) award attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and (7) award any other equitable and just relief which is found appropriate.

On July 29, 2002, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. # 6]. Defendants' stated grounds for dismissal are as follows: (1) Mr. Tatum fails to state a claim under ERISA because the actions about which he complains are not subject to ERISA's fiduciary duty provisions; and (2) even if the actions had been subject to a fiduciary duty under ERISA, the Complaint fails to state a claim for breach of fiduciary duty. Defendants request that the Court, as part of its determination of the Motion to Dismiss, consider nine exhibits.[6]

In response, on October 18, 2002, Plaintiff filed a Motion requesting oral argument on Defendant's Motion to Dismiss, or alternatively, for leave to file a written response to Defendant's Reply [Doc. # 12]. Plaintiff contends that oral argument or a surreply is necessary to address new arguments that Defendants raised in their Reply Brief in support of their Motion to Dismiss. In addition, Plaintiff contends that a hearing would provide helpful clarification concerning which of the nine documents proffered by Defendants properly can be considered in the Rule 12(b)(6) determination.

## II.

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The Fourth Circuit has stated that "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).[7]

---

ings (NGH) common stock and/or Nabisco (NA) common stock at any time from June 14, 1999 to and including January 31, 2000. The following individuals are excluded from the Class: officers and directors of R.J. Reynolds Tobacco Holdings, Inc., R.J. Reynolds Tobacco Company, RJR Industries, Inc., R.J. Reynolds Tobacco International, Inc., and RJR Tobacco Consolidated IHC, Inc.; members of their immediate

families, successors or assigns of any of the foregoing.

**6.** The nine exhibits are attached to Defendants' Motion to Dismiss [Doc. # 6] as Exhibits A through I, and are discussed in more detail in Part II of this opinion.

**7.** A recent Supreme Court case, *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), held that a complaint need

■ Generally, only the allegations of the Complaint are considered in deciding a motion to dismiss pursuant to Rule 12(b)(6). When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir.1998). However, in determining whether a 12(b)(6) motion should be granted, a district court may consider documents extraneous to the Complaint in certain circumstances without converting the motion into one for summary judgment. Specifically, documents that are "integral to and explicitly relied on in the complaint" *may* be considered, if the authenticity of such documents is not in question. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir.1999). The *Phillips* court considered a news article that contained the statement that served as the very basis for the plaintiff's claim for fraudulent misrepresentation.

■ In order for this Court to consider the nine documents attached to Defendants' Motion to Dismiss, each of the three *Phillips* requirements must be satisfied. First, the documents must be integral to the Complaint. Second, the documents must be explicitly relied on in the Complaint. Third, the authenticity of the documents must not be challenged. The nine documents submitted by the Defendants are listed below.

(A) The RJRN Capital Investment Plan

(B) The 1998 Summary Plan Description of the RJRN Capital Investment Plan

(C) The May 12, 1999 Minutes of a Meeting of the Board of Directors of Reynolds–Nabisco Holdings

(D) The April 1999 Notice to Participants [of the RJRN Plan]

(E) The June 2, 1999 Letter to Participants [of the RJRN Plan]

(F) The October 1999 Letter to Participants [of the Tobacco Holdings Plan]

(G) The June 7, 1999 Consent in Lieu of Meeting of the RJR Employee Benefits Committee

(H) The Tobacco Holdings' Capital Investment Plan (a June 14, 1999 Amendment to the RJRN Capital Investment Plan)

(I) The November 18, 1999 Amendment to the Tobacco Plan

Mr. Tatum challenges the authenticity of Documents D, E, F, and G. Further, there is no evidence that these four particular documents were integral to the Complaint or relied upon in the Complaint. Therefore, Documents D, E, F, and G cannot be considered by the Court as part of Defendants' Motion to Dismiss.

Mr. Tatum does not specifically challenge the authenticity of Document C, the minutes from the Board of Directors meeting. However, this document is not even referenced in the Complaint,[8] and is there-

---

not forecast evidence sufficient to *establish* the plaintiff's claim. However, the Fourth Circuit has not interpreted *Swierkiewicz* as removing a plaintiff's burden "to set forth facts sufficient to *allege* each element of his claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002).

8. Defendants claim that the minutes are referenced in the Complaint through the following language, "[t]he stated reason for the spin-off and the separation of the food and tobacco businesses was ...." (Compl.¶ 20.) Defendants argue that the "stated reason" was originally drawn from the meeting minutes. Even if Defendants are correct, that this general language constitutes a "reference" to Document D, that would not have been enough to show that Document D was integral or relied upon. *See Mandsager v. Univ. of N.C. at Greensboro*, 2002 WL 31942139, * 1 (M.D.N.C.2002) (unpublished).

fore not integral to or relied upon in the Complaint. Document C will not be considered.

The remaining four documents (A, B, H, & I) are all official plan documents, and the authenticity of each is not specifically challenged by Mr. Tatum. Documents A and B relate to the predecessor investment plan, the RJRN Capital Investment Plan. They are not integral to the Complaint, and therefore will not be considered. However, Documents H and I are the very documents that establish and amend the Tobacco Plan, the plan at issue. Documents H and I are therefore integral to the allegations of the Complaint. Further, the Complaint relies upon these documents. Relying upon Document H, the Complaint states the following:

> On or about June 14, 1999, the RJRN Capital Investment Plan was amended. At that time, the Plan was renamed the R.J. Reynolds Tobacco Company Capital Investment Plan ("Plan") and the NGH and NA stock funds held by the Plan were "frozen." (Compl.¶ 23.)

And relying upon Document I, the Complaint states the following:

> On or about November 18, 1999, the Plan was amended to provide the following investment options for its participants .... Nothing in the amendment prohibited the Plan and its fiduciaries from maintaining the NGH and NA common stock funds as investment options in the Plan. (Compl.¶ 26).

The above-stated allegations of the Complaint rely upon Documents H and I. As, in addition, these two documents are integral to the Complaint and of unchallenged authenticity, Documents H and I will be considered as part of Defendants' Motion to Dismiss. In summary, only two of the nine documents proffered by the Defendants, Documents H and I, satisfy the three requirements set forth in *Phillips*, 190 F.3d at 618, and will therefore be considered in deciding Defendants' Motion to Dismiss.[9]

## III.

For the reasons stated below, Defendants' Motion to Dismiss will be GRANTED, and thereby this case will be DISMISSED. Defendants' two stated grounds for dismissal are as follows: (1) Mr. Tatum fails to state a claim under ERISA because the actions about which he complains are not subject to ERISA's fiduciary duty provisions; and (2) even if the actions had been subject to a fiduciary duty under ERISA, the Complaint fails to state a claim for breach of fiduciary duty. As this Court finds that the actions complained about are not subject to ERISA's fiduciary duty provisions, there is no need to address Defendants' second grounds for dismissal.

 A person only becomes subject to fiduciary duties under ERISA "when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (citation omitted). The defined functions of a fiduciary do not include plan design and other settlor functions. *Id.* Therefore, when an employer creates, amends, or terminates an employee benefit program, it is acting as a plan settlor, and not as a plan fiduciary. *Id.*

 The classification of an employer as a fiduciary or a settlor is not an all-or-

---

9. The other seven documents could be considered if the Court elected to convert Defendants' Motion to Dismiss into a motion for summary judgment. However, the Court declines this option and will determine Defendant's Motion to Dismiss under the Rule 12(b)(6) standard.

nothing distinction. In other words, "a party is a fiduciary only as to the activities which bring the person within the definition." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992) (construing the phrase "to the extent" in 29 U.S.C. § 1002(21)(A) to determine that "a court must ask whether a person is a fiduciary with respect to the particular activity at issue").

█ In the dispute at hand, taking all allegations of the Complaint as true, the complained of actions were all performed as part of settlor functions, and were not an exercise of fiduciary discretion. The Complaint has failed to state a claim for breach of fiduciary duty under ERISA because the Complaint fails to allege any actions that would trigger the fiduciary duty provisions.

As creating and amending benefit plans are considered settlor functions, the June 14, 1999 Amendment to the RJRN Capital Investment Plan [Doc. # 6, Ex. H], which created the Tobacco Plan, and the November 18, 1999 Amendment to the Tobacco Plan [Doc. # 6, Ex. I] represent the exercise of settlor functions and do not trigger any fiduciary duties. The June 14 document established the Tobacco Plan and stated that all Nabisco funds were "frozen." Relevant language from the June 14 document is as follows:

> The Trustee shall maintain the following separate Investment Funds within the Trust Fund: the Interest Income Fund, the Nabisco Common Stock Fund, the Nabisco Group Holdings Common Stock Fund, the RJR Common Stock Fund, the Total Stock Market Fund, the Total International Fund, the Conservative Growth Fund, the Moderate Growth Fund and the Growth Fund. All Investment Funds under the Plan are active Funds; provided, however, the Nabisco Common Stock Fund and the Nabisco Group Holdings Common Stock Fund

are frozen and, as of the Effective Date, Participants are prohibited from investing contributions or reallocating amounts held under the Plan to such Funds. In addition, the Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee. [Doc. # 6, Ex. H ¶ 4.03]

The November 18 document required the January 31 liquidation of the frozen Nabisco funds, and provided new language regarding the funds to be held by the Tobacco Plan. This new language was explicitly stated to become effective on February 1, 2000, and is as follows:

> The Trustee shall maintain the following separate Investment Funds within the Trust Fund: the Interest Income Fund, the RJR Common Stock Fund, the Total Stock Market Fund, the Total International Fund, the Conservative Growth Fund, the Moderate Growth Fund and the Growth Fund. All Investment Funds under the Plan are active Funds. In addition, the Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee. [Doc. # 6, Ex. I ¶ 6].

Mr. Tatum concedes that the two amendments were created pursuant to settlor authority, not discretionary fiduciary authority. However, Mr. Tatum alleges that the focus of his Complaint is on the Defendants' actions *subsequent to* these amendments. He alleges that the Defendants had discretion, as Tobacco Plan fiduciaries, to prevent the January 31, 2000 liquidation of the Nabisco stock. However, a plain reading of the relevant documents shows otherwise.

In deciding the 12(b)(6) Motion, the Complaint and the two relevant amendments (Doc. H & Doc. I, discussed *supra*) are being considered. Taking the allegations of the Complaint as true, in conjunc-

tion with the language of the amendments, it is apparent that Defendants had no discretion to prevent the January 31, 2000 sale, and therefore no fiduciary duties under ERISA were triggered.

The June 14, 1999 Amendment clearly delineates the settlors' intent to freeze the Nabisco stock. Other Tobacco Plan Funds are listed, and the Defendants are given fiduciary authority to maintain "any *other* Investment Funds" (emphasis added). The use of the word "other" clearly exempts this grant of authority from applying to the Nabisco stocks that have already been explicitly addressed in that same paragraph.

The November 18 Amendment amends the Tobacco Plan to include more general language regarding the Defendants' discretion to maintain funds other than the ones listed. However, this particular provision has a clear, stated effective date of February 1, 2000, the day *after* the required sale of the Nabisco stocks. Therefore, Mr. Tatum's argument that this provision provided Defendants with the discretionary authority to prevent the sale is unfounded, as any authority granted by this provision did not become effective until after the sale had already occurred.

In short, the decision to freeze, and eventually sell, the Nabisco stocks was made and effectuated pursuant to settlor authority. Mr. Tatum has failed to state a claim that Defendants, within their fiduciary capacities, had any discretionary authority to prevent this sale. Therefore, Defendants' Motion to Dismiss Mr. Tatum's breach of fiduciary duty claim will be GRANTED.

## IV.

In summary, Defendants' Motion to Dismiss the Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. # 6] will be GRANTED, and this case will be DISMISSED. Plaintiff's Motion Requesting Oral Argument on Defendant's Motion to Dismiss, or alternatively, for Leave to File a Written Response to Defendant's Reply [Doc. # 12] is DENIED. Oral argument is not needed because the facts and legal contentions are adequately presented in the materials before the Court and arguments would not aid the decisional process. Similarly, new arguments were not raised in Defendants Reply brief such that fairness would require the filing of a surreply.

## JUDGMENT

For the reasons set forth in a contemporaneously filed Memorandum Opinion, Plaintiff's Motion Requesting Oral Argument on Defendant's Motion to Dismiss, or alternatively, for Leave to File a Written Response to Defendant's Reply [Doc. # 12] is DENIED. Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. # 6] is GRANTED, and this case is DISMISSED.