PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

RICHARD G. TATUM, individually and
on behalf of a class of all other
persons similarly situated,
              *Plaintiff-Appellant,*

              v.

R.J. REYNOLDS TOBACCO COMPANY;
R.J. REYNOLDS TOBACCO HOLDINGS,
INCORPORATED; RJR EMPLOYEE
BENEFITS COMMITTEE OF THE R.J.
REYNOLDS TOBACCO COMPANY
CAPITAL INVESTMENT PLAN; RJR
PENSION INVESTMENT
COMMITTEE OF THE R.J. REYNOLDS
TOBACCO COMPANY CAPITAL
INVESTMENT PLAN,
              *Defendants-Appellees.*

No. 04-1082

───────────────

SECRETARY OF LABOR,
      *Amicus Supporting Appellant,*

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA;
AMERICAN BENEFITS COUNCIL,
      *Amici Supporting Appellees.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-02-373-1)

Argued: September 28, 2004

Decided: December 14, 2004

Before MICHAEL and MOTZ, Circuit Judges, and
Henry E. HUDSON, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

---

Reversed and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Motz and Judge Hudson joined.

---

## COUNSEL

**ARGUED:** Jeffrey G. Lewis, LEWIS, FEINBERG, RENAKER & JACKSON, P.C., Oakland, California, for Appellant. Daniel Russell Taylor, Jr., KILPATRICK STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellees. George William Scott, III, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Supporting Appellant. **ON BRIEF:** Robert M. Elliot, J. Griffin Morgan, ELLIOT, PISHKO, MORGAN, P.A., Winston-Salem, North Carolina; Bill L. Lee, James M. Finberg, LEIFF, CABRASER, HEIMANN & BERNSTEIN, San Francisco, California; Lisa T. Belenky, LEWIS, FEINBERG, RENAKER & JACKSON, P.C., Oakland, California, for Appellant. Adam H. Charnes, Kristin M. Major, KILPATRICK STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellees. Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Plan Benefits Security Division, Elizabeth Hopkins, Counsel for Appellate and Special Litigation, G. William Scott, Senior Trial Attorney, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Supporting Appellant. Hollis T. Hurd, THE BENEFITS DEPARTMENT, Pittsburgh, Pennsylvania; Susan Relland, Lynn Dudley, AMERICAN BENEFITS COUNCIL, Washington, D.C., for American Benefits Council; Stephen A. Bokat, Ellen Dunham Bryant, NATIONAL CHAMBER LITIGATION CENTER, Washington, D.C., for the Chamber of Commerce of the United States, Amici Supporting Appellees.

**OPINION**

MICHAEL, Circuit Judge:

This is an appeal from an order, entered under Fed. R. Civ. P. 12(b)(6), dismissing a complaint alleging that fiduciaries under a 401(k) plan breached their duty of prudence under the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, when they liquidated two of the plan's investment funds at a loss. The district court concluded that no fiduciary duties were implicated because the plan sponsor had amended the plan to require elimination of the funds. We disagree. Because the plain language of the amendments did not strip the fiduciaries of discretion to maintain the funds in the plan, the amendments do not bar the plaintiff from stating a claim that the decision to liquidate the funds violated ERISA's duty of prudence. We therefore reverse.

I.

Because we are reviewing a Rule 12(b)(6) dismissal order, we take the facts from the well-pleaded allegations of the amended complaint. *See Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). As of 1999 the plaintiff, Richard G. Tatum, was an employee of defendant R.J. Reynolds Tobacco Company ("RJR Tobacco"), a corporation engaged in the manufacture and sale of tobacco products. RJR Tobacco was a wholly-owned subsidiary of RJR Nabisco Holdings Corp. ("RJR Nabisco"); RJR Nabisco also owned 80.5 percent of the stock of its food products subsidiary, Nabisco Holdings Corp. ("Nabisco Holdings"). As of 1999 employees of RJR Nabisco and its tobacco and food subsidiaries had the option to participate in the RJR Nabisco Capital Investment Plan (the "Original Plan"), a 401(k) retirement plan governed by ERISA. Tatum, as an employee of RJR Tobacco, participated in the Original Plan. Participants in the Original Plan could direct the investment of contributions into several funds, including (1) a common stock fund holding only the shares of RJR Nabisco and (2) a common stock fund holding only the shares of Nabisco Holdings (together, the "Nabisco funds"). Tatum directed the Original Plan to invest in the Nabisco funds for his individual account.

In May 1999 the board of directors of RJR Nabisco approved a plan to dissociate its food and tobacco units by spinning off RJR

Tobacco as a separate company. As a step in implementing the spin-off, defendant R.J. Reynolds Tobacco Holdings, Inc. ("RJR Holdings") was created as the new parent company for RJR Tobacco. The actual spin-off occurred on June 15, 1999, when the shares of RJR Holdings were distributed to the shareholders of RJR Nabisco, then renamed Nabisco Group Holdings Corp. ("Nabisco Group Holdings"). The spin-off was accompanied by changes to the RJR Nabisco 401(k) plan (the Original Plan). On June 14, 1999, the Original Plan was divided into two separate plans, one of which was the R.J. Reynolds Tobacco Company Capital Investment Plan (the "Tobacco Plan" or the "Plan"). Participation in the Tobacco Plan was limited to the employees of RJR Tobacco and its affiliates. Tatum thus became a participant in the Tobacco Plan.

The Tobacco Plan included an amended section 4.03 that described the investment options available to participants after June 14, 1999. Among other things, amended section 4.03 froze the Nabisco funds and prohibited further contributions into those funds. The section read:

> *Separate Funds.* The Trustee shall maintain the following separate Investment Funds within the Trust Fund: the Interest Income Fund, the Nabisco Common Stock Fund, the Nabisco Group Holdings Common Stock Fund, the RJR Common Stock Fund, the Total Stock Market Fund, the Total International Fund, the Conservative Growth Fund, the Moderate Growth Fund and the Growth Fund. All Investment Funds under the Plan are active Funds; provided, however, the Nabisco Common Stock Fund and the Nabisco Group Holdings Common Stock Fund are frozen and, as of the Effective Date, Participants are prohibited from investing contributions or reallocating amounts held under the Plan to such Funds. In addition, the Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee.

J.A. 247.* At about the time section 4.03 was amended in mid-June

---

*In his amended complaint Tatum relies on the June 14, 1999, amendment to section 4.03 of the Tobacco Plan and a later, November 18,

1999, RJR Tobacco informed Tobacco Plan participants that the Nabisco funds "would remain frozen and then would be eliminated from the Plan approximately six months after the date of the spin-off." J.A. 13-14. Later, in October 1999 RJR Tobacco informed Plan participants that the Nabisco funds would be eliminated as investment options on January 31, 2000. Finally, section 4.03 of the Tobacco Plan was again amended on November 18, 1999, as follows:

> Effective February 1, 2000, Section 4.03 of the Plan is amended to read as follows:
>
> 4.03 *Separate Funds*. The Trustee shall maintain the following separate Investment Funds within the Trust Fund: the Interest Income Fund, the RJR Common Stock Fund, the Total Stock Market Fund, the Total International Fund, the Conservative Growth Fund, the Moderate Growth Fund and the Growth Fund. All Investment Funds under the Plan are active Funds. In addition, the Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee.

J.A. 303-04. On or about January 31, 2000, the Tobacco Plan sold, at a substantial loss, all shares of Nabisco Group Holdings and Nabisco Holdings (together, the "Nabisco stocks") held for participants in the Nabisco funds. The Nabisco funds were thus eliminated as investment options in the Tobacco Plan.

The market value of Nabisco stocks declined precipitously between the June 15, 1999, spin-off and the January 31, 2000, sale of the Nabisco stocks held in the Tobacco Plan. Nabisco Group Holdings stock fell sixty percent to around $8.50 per share, and Nabisco Holdings stock fell forty percent to around $30 per share. Nevertheless, "market analysts were advising investors to buy or hold [Nabisco

---

1999, amendment to the same section. Although the texts of the amendments are not included in the amended complaint, they are in the joint appendix, and the parties agree to their authenticity. In these circumstances it is appropriate for us, in deciding whether dismissal of the complaint is proper, to refer to the actual language of the amendments. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

stocks] despite [their] declining market value," J.A. 15, and were pre-
dicting the stocks would rebound in due course. Tatum maintained
that the amendments to section 4.03 of the Tobacco Plan did not
require the sale of the Nabisco stocks. Accordingly, prior to the liqui-
dation Tatum urged the Plan to allow participants to maintain invest-
ments in Nabisco stocks allocated to their accounts. The Plan refused,
and (as noted) sold the Nabisco stocks held in the Plan on January 31,
2000. The price of the Nabisco stocks rebounded sharply over the
next five months: by late June 2000 Nabisco Group Holdings stock
had more than tripled in price, selling for around $30 per share;
Nabisco Holdings stock had nearly doubled, selling for around $55
per share.

On May 13, 2002, Tatum filed an action on behalf of himself and
a class of similarly situated participants in the Tobacco Plan. The
defendants are RJR Tobacco, RJR Holdings, the employee benefits
committee of the Tobacco Plan, and the pension investment commit-
tee of the Tobacco Plan. Tatum alleges in his amended complaint that
the defendants breached their fiduciary duty of prudence under
ERISA by eliminating the Nabisco funds as an investment option
under the Tobacco Plan and by selling the Nabisco stocks held in the
Plan. *See* 29 U.S.C. § 1104(a)(1). The defendants moved to dismiss
the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to
state a claim. The district court granted the motion, concluding that
(1) the amendments to section 4.03 were plan design or settlor acts
that did not trigger fiduciary duties under ERISA, and (2) the Novem-
ber 1999 amendment "required the January 31 [2000] liquidation of
the frozen Nabisco funds." *Tatum v. R.J. Reynolds Tobacco Co.*, 294
F. Supp. 2d 776, 783 (M.D.N.C. 2003). Tatum appeals the district
court's dismissal order, and our review is de novo, *see Flood v. New
Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997).

## II.

Tatum argues that his amended complaint states a claim that the
defendants breached their fiduciary duties under ERISA when they
failed to exercise their discretion to maintain the Nabisco funds as
investment options for Tobacco Plan participants. Nothing in the
amendments to section 4.03 of the Plan required the defendants to liq-
uidate the Nabisco funds, according to Tatum. ERISA requires a plan

fiduciary to make discretionary investment decisions "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). The defendants were subject to this "[p]rudent [person] standard of care," *id.* § 1104(a), if they had the discretion to maintain the Nabisco funds in the Plan after the amendments were adopted.

The defendants argue that Tatum fails to state a claim for breach of fiduciary duty under ERISA because the liquidation of the Nabisco funds (or stocks) in the Plan was a non-discretionary act required by the amendments. According to the defendants, the liquidation was non-discretionary because it simply carried out the mandate of the amendments, which were adopted pursuant to RJR Tobacco's authority as Plan sponsor or settlor. Generally, when a plan sponsor amends an ERISA plan, it acts as a settlor and is not subject to ERISA's fiduciary duties. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996). This rule raises the question whether a plan fiduciary is freed from his fiduciary responsibilities if he simply implements the mandates of the plan document. In this case Tatum and the Secretary of Labor (as amicus curiae) argue that even if the amendments to the Tobacco Plan required the sale of the Nabisco stocks, the Plan fiduciaries had the duty to ignore the Plan document if it was imprudent to sell. We need not reach this question if the amendments did not require the elimination or liquidation of the Nabisco funds. They did not, as we next explain.

Section 4.03 of the Plan, as amended in June 1999, required the trustee to maintain nine investment funds, including the two Nabisco funds. Seven funds were designated as active, and the two Nabisco funds were frozen. Further investments in the Nabisco funds were prohibited. Section 4.03 was again amended in November 1999, with the amendment to take effect on February 1, 2000. This amendment required the trustee, as of February 1, 2000, to maintain seven investment funds, but the Nabisco funds were not among those listed. The November amendment also deleted the clause that had designated the Nabisco funds as frozen. In addition, the November amendment provided that all funds "under the Plan are active Funds," and "the

Trustee shall maintain any other Investment Funds as are designated by the RJR Pension Investment Committee." J.A. 304.

A plain reading of the amendments reveals several points that are dispositive: (1) the trustee was required to maintain the Nabisco funds as frozen funds from June 14, 1999, through January 31, 2000; (2) as of February 1, 2000, the Nabisco funds were unfrozen, were not listed as investment options, and were no longer required to be maintained as investment funds under the Plan; and (3) other investment funds, in addition to those listed, could be designated by the investment committee on or after February 1, 2000. All of this means that the amendments did not strip the Plan fiduciaries of discretion to redesignate the Nabisco funds as investment options effective February 1, 2000. In other words, the amendments did not require the elimination of the Nabisco funds from the Plan, nor did they require the sale of the Nabisco stocks.

In sum, nothing in the language of the amendments prevents Tatum from stating a claim that the liquidation of the Nabisco funds in the Plan was a discretionary act subject to ERISA's fiduciary duty of prudence, *see* 29 U.S.C. § 1104(a)(1), and that the Plan fiduciaries violated the applicable standard of care in liquidating those funds. We therefore reverse the district court's order dismissing the amended complaint for failure to state a claim. The case is remanded for further proceedings.

*REVERSED AND REMANDED*